167 So.2d 721 (1964)
VILLAGE OF NORTH PALM BEACH, a municipal corporation in Palm Beach County, Florida, Petitioner,
v.
Edwin L. MASON, Jerry W. Carter and Wilbur C. King, as and constituting the Florida Railroad and Public Utilities Commission, and North Palm Beach Utilities, Inc., Respondents.
No. 32794.
Supreme Court of Florida.
June 17, 1964.
Rehearing Denied October 22, 1964.
*722 Burns, Middleton, Rogers & Farrell, Palm Beach, for petitioner.
Lewis W. Petteway and Richard J. Brooks, Tallahassee, for Florida Railroad and Public Utilities Commission; Ervin, Pennington & Varn, Tallahassee, and Starr W. Horton, Miami, for North Palm Beach Utilities, Inc., respondents.
HOBSON, Justice (Ret.)
This case is before us upon a petition for a writ of certiorari filed by the Village of North Palm Beach and directed to the Florida *723 Railroad and Public Utilities Commission's order #3546, dated March 13, 1963.
We shall take the history of the case as factually set forth in the brief of the petitioner. The respondent, North Palm Beach Utilities, Inc., agrees generally with this statement or history of the case but expressly states that "the Utility cannot, of course, accept the conclusions of the Village therein contained." We have attempted to delete such conclusions.
The statement or history of the case follows:
a. The Village was created by Chapter 31,481, Ex.Sess. 1956, and laws supplemental and amendatory thereto. Its charter provides in § 3:
"(9) To give and grant franchises upon such terms and conditions as the Council shall prescribe, for a term not longer than thirty (30) years, to those engaged in furnishing gas, water, electric, telephone, transportation, sewer or other public service. * * *."
b. By its ordinance No. 5 enacted on October 22, 1956, it gave respondent Utility a franchise for a water and sewer system in the Village which therein set the applicable initial charges and rates.
c. Chapter 57-1697, Laws of Florida, Special Acts of 1957, authorized the Board of County Commissioners of Palm Beach County, Florida, under certain conditions therein set out, to give sewer and water franchises in unincorporated areas of said County, but not in incorporated areas of the County.
d. In June of 1959, Chapter 59-372, Laws of Florida, Acts of 1959 (now codified as Chapter 367 F.S.), and known as the "Water and Sewer System Regulatory Law," became effective.
e. In July of 1959, under the provisions of said Chapter 367 F.S., the said Board of County Commissioners passed the enabling resolution making Chapter 367 F.S. applicable in that County.
f. On November 3, 1960, the respondent Commission by its orders numbers 3042 and 3043 granted the Utility Certificates of Public Convenience and Necessity for operation of a then existing Water and Sewer System in the Village.
g. In January of 1962, the Utility filed with the respondent Commission, under Chapter 367 F.S. its Petition for Rate Adjustment, marked in docket 6492 WS. No further proceedings were held in said docket.
h. In June of 1962, the Utility filed with the respondent Commission, under Chapter 367 F.S. its Amended Petition for General Rate Increase, marked in docket 6654 WS.
i. To said Amended Petition mentioned in the preceding sub-paragraph h., the Village filed its Motion to Dismiss which was a short time later amplified by two supplements.
j. Public hearings were had by the respondent Commission on September 4 and October 30, 1962. On September 4, 1962, the Motion of the Village to Dismiss, as so supplemented, was argued but was taken under advisement by the respondent Commission, whereupon it at once proceeded to a hearing on the merits of the Amended Petition without permitting the Village an opportunity to take issue with or file an answer to said Amended Petition.
k. By its order number 3546, dated March 13, 1963, the respondent Commission granted the prayers of the Amended Petition of the Utility and by the same order denied the Motion to Dismiss, as supplemented, of the Village.
l. A petition for Reconsideration or Rehearing of said order number 3546 was timely filed by the Village and was denied by order of the respondent Commission *724 dated April 11, 1963, number 3558.
m. Within the time provided by law, the Village has filed in this Court its Petition for Writ of Certiorari to the respondent Commission. The petitioner below is also named as a respondent herein.
The petitioner contends first that the Commission does not have jurisdiction in this case. The second question propounded is couched in the following language:
"Where, in a rate proceeding under the Water and Sewer System Regulatory law, it appears the engineering report, required by Section 12 of that law (§ 367.12(2) FS), filed with the Commission when the applicant received its certificates of public convenience and necessity, included in the value of the properties described in said report distribution lines of the company which had been contributed to it without cost, should the Commission, in determining proper rates, take into consideration that such properties were contributed to the company without cost, or should it consider said engineering report as a `starting point' and refuse to consider whether or not items therein have a nil cost basis to the company?"
We do not deem it necessary or proper in this opinion to answer this second question for reasons which will hereinafter become apparent.
The third point made by petitioner constitutes a challenge to the constitutionality of Chapter 59-372, Acts of 1959, now codified as Chapter 367, F.S. Petitioner's point number 4 likewise assails the validity of this same legislative act. Petitioner under point number 3 contends that said act violates the uniform operation requirements set forth in Sections 20 and 21, Article III of the Florida Constitution, F.S.A. In support of point number 4, petitioner says that such act fails to afford equal protection of the laws to the citizens of the Village of North Palm Beach, Florida, contrary to the provisions of the Federal and State Constitutions.
Under point number 5, the petitioner poses a query containing two facets. We quote from petitioner's brief:
"Did the procedure adopted by the respondent Commission at its hearings whereby the village was foreclosed of an opportunity to file an answer or other affirmative defense to the amended petition for rate increases, and the failure of the Commission in its order number 3546 to set forth findings of fact and conclusions of law amount to departures from the essential requirements of the law?"
Counsel for petitioner in their arguments in support of point 1 take the position that the Commission did not have jurisdiction of this rate proceeding because the applicant for the rate increase never held a franchise from Palm Beach County, Florida, and that the certificates of public convenience and necessity which the applicant does hold were issued without authority by the Commission as a result of the Commission's misconstruction of F.S., Section 367.06, F.S.A.
The Commission apparently held that it had jurisdiction and the right or power to issue certificates of public convenience and necessity to the respondent Utility by Construing F.S., Sections 367.05 and 367.06, F.S.A., in pari materia. Under this process of reasoning the Commission found the indication of a legislative intent that a county franchise be required only when a utility operates in unincorporated territory. We find some difficulty in following this line of reasoning but we have no trouble in determining the Commission's jurisdiction in this cause. It is indeed an arduous task to find a basis for considering the aforementioned sections in pari materia because Section 367.05 deals exclusively with "Procedure for obtaining certificates for a new system." On the other hand, Section 367.06 deals with an entirely different *725 subject, "Certificates for existing systems." Each section has its independent field of operation and is complete within itself insofar as the question of the issuance of certificates is concerned.
We are of the view that the jurisdiction of the Commission stems from F.S., Section 367.03, F.S.A., which we quote in pertinent part as follows:
"Every public utility excluding utilities owned or operated by governmental agencies engaged on June 18, 1959, in operating, constructing or extending any water system or sewer system shall register with the commission within sixty days after June 18, 1959, * *." (Italics supplied.)
We note that utilities owned or operated by governmental agencies are excluded and later on in Chapter 367 there are other exemptions and exclusions from the operation of the "WATER AND SEWER SYSTEM REGULATORY LAW." (Chapter 367, F.S.) In discussing the challenges to the constitutionality of said legislative act we will deal in more detail with these exceptions or exemptions.
We think that if any sections of the subject act are to be considered in pari materia they should be Sections 367.03, 367.06 and 367.21.
Section 367.06[1] might be said to be subject to more than one interpretation or construction. The puzzling question obviously is whether the qualifying phrase "holding a valid and existing franchise granted by the board of county commissioners of any county of this state in a given county" should be visited back upon "Every public utility" or only be considered as attaching to "any person, firm or corporation." It has been a long time since any of us struggled with grammatical construction in the classroom, all the while wishfully thinking of recess and the playground, but what we feel that we learned in those halcyon days of the yesteryears requires us to conclude that the opening words "Every public utility" of Section 367.06, being set apart as they are by a comma and the disjunctive "or" from the remaining items of the series, are not qualified by the phrase "holding a valid and existing franchise granted by the board of county commissioners of any county of this state in a given county." It will also be noted that there is no comma or other punctuation mark after the word "corporation" or before the qualifying phrase itself. In State ex rel. Owens v. Pearson (Fla.), 156 So.2d 4, 6, we applied the rule of grammatical construction to which we refer herein although in the Pearson case the conjunctive "and" was used rather than the disjunctive "or." The subject rule of construction is even more readily adaptable when the disjunctive "or" is implied. Let it be said, however, that in Pearson we did not turn our decision entirely upon the matter of grammatical construction of the language used in Section 4, Article V, Florida Constitution, F.S.A. In that case we found "the clear intent of the Constitution when all of Section 4 is read together" to be consonant with the grammatical construction which we gave to the critical language of Section 4.
We feel that our conclusion is strengthened by considering Section 367.03, particularly the first three words thereof  "Every public utility" in pari materia with Section 367.21 which grants exclusive jurisdiction unto the Commission "except where municipal jurisdiction is exercised in municipalities of one hundred thousand or more population." (Italics supplied.)
*726 We believe that it was the intent of the legislature to place every public utility "owning, leasing, constructing, operating, or managing any water system or sewer system, or both, in this state" under the jurisdiction of the Florida Railroad and Public Utilities Commission with certain clearly delineated exemptions and exceptions.
If such were not the legislative intent we cannot understand why the legislature in Section 367.03 required every public utility, except those utilities owned or operated by governmental agencies engaged on June 18th, 1959, in operating, constructing or extending any water system or sewer system, to register with the Commission. We have decided that every public utility so required to register came under the jurisdiction of the Commission upon meeting this requirement of registration, although such jurisdiction is not exclusive in municipalities of one hundred thousand or more population wherein the municipality is exercising jurisdiction. Moreover as aforestated there are certain areas which are unaffected by Chapter 367, F.S.
It is our conclusion that the Commission has had jurisdiction of North Palm Beach Utilities, Inc., from the instant said Utility registered with the Commission as required by F.S. Section 367.03 F.S.A.; the Commission had the right, power and authority to issue to the respondent Utility certificates of public convenience and necessity as provided in F.S. Section 367.06, F.S.A.; the Commission acted within the scope of its authority in considering and acting upon the petition filed by the Utility wherein said Utility sought a rate increase.
We shall now give our attention to petitioner's points three and four. Initially it should be observed and thereafter constantly kept in mind that one who asserts the unconstitutionality of an act of the legislature has the burden of demonstrating clearly that such act is indeed invalid. We find that petitioner herein has failed to carry this burden.
The contention that a constitutional issue is presented by F.S. Section 367.23, F.S.A., which declares that the act shall operate only in those counties where the Board of County Commissioners by resolution ask that it be made applicable, is not insisted upon by petitioner. However, petitioner does apparently seriously contend that F.S. Sections 367.22 and 367.18, F.S.A., require a ruling that Chapter 367 is unconstitutional.
With reference to Section 367.22, petitioner is in error in stating that under said section it is provided that "the act shall never operate within cities having 100,000 or more population." Section 367.22 simply states, "provided however that no existing franchise or contract rights of municipalities having one hundred thousand or more population according to the last official census shall be impaired thereby." Moreover, Section 367.21 under the heading "Exclusive jurisdiction" reads:
"The jurisdiction conferred upon the commission by this law shall be exclusive, except where municipal jurisdiction is exercised in municipalities of one hundred thousand or more population * * *."
In other words, the Commission has jurisdiction even in municipalities of 100,000 or more population but such jurisdiction is not exclusive and may be exercised only in the event municipal jurisdiction is not exercised in such municipalities. However, in no instance may existing franchise or contract rights of such a municipality be impaired.
Petitioner stresses its contention that Section 367.18, which says "the Act shall never operate as to a long list of other areas of the State mentioned in the Special Acts referred to in this section, viz., Orlando, Key West, etc., etc.," renders Chapter 367, F.S., unconstitutional.
*727 Before writing our views with reference to petitioner's arguments in support of its point number three, we will outline petitioner's bases in support of its contention under point number four that Chapter 367, F.S., fails to afford equal protection of the laws to the citizens of the Village of North Palm Beach, Florida.
Counsel for petitioner in their brief state:
"We argue here and we argued below on behalf of the citizens and taxpayers of the Village of North Palm Beach (rather than on behalf of the Village itself) that the 1959 Act provides one thing for the citizen of North Palm Beach and another altogether different thing for the citizen of Jacksonville, or Tampa, or Miami, or Orlando, or Key West, etc., etc. For the latter, the matter of water and sewer rates, and the regulations of private utilities affording those services for those citizens are subjects vested in the local governing bodies of those areas, people elected by the citizens themselves, while in the case of North Palm Beach, this close form of control by intimate local government has been taken away and the jurisdiction of the Railroad Commission, located 500 miles away, substituted. It means that what is a proper rate base, and therefore a proper rate for Orlando water, for instance, is dependent, shall we say, upon the original cost of the system, while in North Palm Beach  if the Railroad Commission has by its decision below correctly interpreted the 1959 Act  original cost has little to do with it since the Legislature has, according to the Commission, at least, provided otherwise, consequently the end result will be one rate in one place and a totally different rate in another; whereas, if all were governed by the same law, while the rates might not be the same, at least the method of determining proper rate base would be.
"This is not equal protection of the laws; this is discrimination. * * *"
While this contention is fresh in our minds we will attempt to dispose of it. Here again we must refer to petitioner's burden of demonstrating clearly the unconstitutionality of the challenged legislative enactment. We note that counsel for petitioner state "We argue here and we argued below" that "the end result will be one rate in one place and a totally different rate in another." If this asserted fact were clearly established we might be required to hold that such discrimination would be violative of the equal protection provision of the federal and state constitutions. Counsel's arguments appear to us to be more conjectural than factual. We find no allegation or proof[2] of the asseverated fact "that what is a proper rate base, and therefore a proper rate for Orlando water, for instance, is dependent, shall we say, upon the original cost of the system * *." In other words, it is contended that although the rates might not be the same in different territories throughout the state, at least the method of determining proper rate base should be. With this contention we can find little fault, but such a situation as is depicted by counsel is not shown by this record clearly, or at all, to exist.
We advert now to the arguments in support of the contention that Chapter 367 is unconstitutional because it fails to provide for "uniform operation throughout every nook and cranny of the State of Florida" and thus is violative of Sections 20 and 21, Article III of the Florida Constitution.
In Cates v. Heffernan, 154 Fla. 422, 18 So.2d 11, we said: "This court is committed to the doctrine that the organic requirement of uniform operation throughout the state does not mean universal operation *728 over the state." In other words, a law is not necessarily discriminatory  hence invalid  because it lacks universality of operation over the state. The test to be applied is whether the exclusion of certain territories, people or properties is predicated upon a fair, proper and reasonable classification or premise. Petitioner has failed to show that the exemptions or exceptions contained in Chapter 367, F.S. (particularly those specified in Sections 367.18 and 367.21), do not meet this test.
As has been stated, municipalities of one hundred thousand or more population are not excluded entirely from the operation of Chapter 367 but only exempt from the jurisdiction of the Commission in the event such municipalities are exercising municipal jurisdiction. We believe this to be a reasonable and proper classification because it is a fact of which the courts may take judicial notice that municipalities of large populations are financially able to support their own regulatory bodies while the burden upon the small municipality of so doing is almost universally prohibitive.
With reference to those areas delineated and set forth in Section 367.18 as being "unaffected" by the provisions of Chapter 367, F.S., we deem it sufficient to say that petitioner does not demonstrate that any of these areas are unregulated because of their exclusion from the operation of Chapter 367. Moreover, if there is discrimination which amounts to denial of equal protection of the laws to the citizens of the Village of North Palm Beach by virtue of these various boards and commissions adopting a different method of determining the rate base than that method used by the Florida Railroad and Public Utilities Commission or for any other reason, such discrimination has not been clearly demonstrated by petitioner.
We now approach the consideration of petitioner's point number five.
The Florida Railroad and Public Utilities Commission, although perhaps quasi judicial in character, is not strictly speaking a judicial body. The procedure adopted by the Commission at its hearings which petitioner contends foreclosed the Village of North Palm Beach of an opportunity to file an answer or other affirmative defense to the amended petition for rate increases is not believed by us to be of sufficient import to require this Court to quash the Commission's order No. 3546. This is so because it has not been shown that petitioner was prejudiced in any manner by the procedure adopted by the Commission. Apparently petitioner had notice of all of the hearings and conferences which were held; was given the opportunity for its counsel to cross-examine on the evidence presented by all other interested parties, and to present its own testimony. Although we feel that it would be more acceptable procedure for the Commission to allow an opportunity to file an answer or other affirmative defense in a matter such as this in order that the record might be a more complete one, we are at a loss to find a departure from the essential requirements of law in the instant case.
Finally we have concluded that we must agree with counsel for petitioner in their contention that order number 3546 is fatally defective in its failure to make separate and specific findings of facts upon which its ultimate conclusion is predicted. See Central Truck Lines, Inc. v. King (Fla. 1962), 146 So.2d 370; Wenshaw v. Smith (Fla. 1963), 151 So.2d 3.
We believe it is now evident to the reader that we have not discussed petitioner's point number two or decided it because we are not in a position to do so and will not be until the Commission has complied with our prior decisions requiring adequate findings of fact and the Commission Rule 2.620.
In summary we hold that: The Commission had jurisdiction over North Palm *729 Beach Utilities, Inc., the Commission possessed the power and authority to issue to said Utility certificates of public convenience and necessity; Chapter 367, F.S., is a constitutional enactment insofar as the attacks made upon it herein are concerned; it was not a departure from the essential requirements of law under all the circumstances for the Commission to proceed as it did without the filing of an answer or other affirmative defense by the petitioner; but that order No. 3546 does not contain sufficient separate findings of fact upon which the Commission's ultimate conclusion is predicted.
Order No. 3546 entered by the Florida Railroad and Public Utilities Commission, March 13, 1963, is hereby quashed and this cause is hereby remanded to the Florida Railroad and Public Utilities Commission for its further consideration in light of the views expressed in this opinion.
THOMAS, Acting, C.J., O'CONNELL and CALDWELL, JJ., and HEWITT, Circuit Judge, concur.
NOTES
[1] F.S. Section 367.06, F.S.A., reads in pertinent part as follows:

"Every public utility, or any person, firm, or corporation holding a valid and existing franchise granted by the board of county commissioners of any county of this state in a given county, * * * shall be entitled to receive from the commission a certificate of public convenience and necessity authorizing such public utility to continue serving the territory it serves on June 18, 1959, * * *."
[2] It is an apodictic aphorism that acts of the legislature are presumptively valid.