THORNAL, Justice.
By petition for a writ of certiorari we are requested to review an order of the-Florida Public Utilities Commission which authorized increases in water and sewer-rates requested by the respondent Margate Utilities Corporation.
We must determine whether the respondent Utility complied with the procedural-requirements of Chapter 367, Florida Statutes, F.S.A.; whether a section of the statute is constitutional, and, in other respects-whether the order of the Commission comports with the essential requirements of' law.
Respondent Margate Utilities Corporation, hereafter referred to as the Utility,, furnishes water and sewer services to the-petitioner and its residents. The petitioner is a municipal corporation located in Broward County. The Utility began operations in 1955. In 1959 it became subject to Chapter 367, Florida Statutes, F.S.A.,. when the Board of County Commissioners-of Broward County adopted a resolution, pursuant to Section 367.23, Florida Statutes, F.S.A. In November 1961, the Utility requested an increase in its water and; sewer rates as authorized by Section 367.- *855 12(2), Florida Statutes, F.S.A. Its application announced that the Utility had operated at a substantial loss in recent years. Respondent Commission called a public hearing as required by Section 367.14(3), Florida Statutes, F.S.A. By -the application the -Utility initially requested a rate increase which would produce a “fair return on the fair value” of its property ■“used and useful in the public service * * * ” Section 367.14(7)-, Florida Statutes, F.S.A. By amendment at a hearing ■on February 22, 1962, the Utility continued to request an increase over its original rates but one which would produce less than a fair return. The amendment therefore reduced substantially the amount of the initially requested increase. It is conceded that this specifically requested increase would in fact produce less than a fair re- . turn on the fair value of the Utility property. By its Order No. 3447, entered September 10, 1962, the respondent Commission approved the rate increases requested by the amended application. The Commission noted that the rate of return yielded by the increased rates would not actually" afford the Utility a fair return on its investment. It observed that the increased rates would produce a net return of only 1.89% in the" water operations and would do nothing more than reduce the Utility’s losses to a minimum in its sewer operations. Although, percentage-wise the increases allowed were substantial, they were still inadequate to produce what would otherwise be considered a fair return on the fair value of the Utility’s property. The Commission concluded that the increase would not adversely affect the Utility’s service to the public. It acknowledged the Utility’s managerial prerogative to request lower rates than the law might otherwise permit. The Commission subsequently denied the City’s petition for rehearing. Section 367.17, Florida Statutes, F.S.A. We now have for review Order No. 3447, supra, which approved ’ the rate increase.
We shall refer to the petitioner, City of Margate, as the City. It initially contends that in the proceeding before the respondent Commission, the Utility failed to meet the procedural requirements of Section 367.14(2), Florida Statutes, "F.S.A. This section, in effect, requires that when a Utility desires a rate'change it must file with the Commission a written notice showing the proposed changes and a written explanation of the reasons for, and the reasonableness of, such changes. In the instant case the- Utility filed a document styled an “application” for its water department and one for its sewer department. These applications purported to set forth the proposed changes in rates which were needed to obtain a “fair return on the fair value of the property” of the utility used and useful in the public service.. The reason for the required increases was stated to be that the Utility had operated at a substantial loss during recent years, despite the fact that it had conducted its business in an efficient and economical manner. The cited statute seems to require separate documents noting proposed changes and supplying explanations therefor. Nevertheless, we do not conclude that the procedure employed in the instant matter was jurisdictionally defective. The information required by the statute was supplied in the composite document styled an “Application.” It has not been demonstrated that the City suffered any prejudice from the failure of the Utility to separate the notice of the rate changes from the explanation of reasons therefor. There was substantial compliance with the requirement of the statute and this-will suffice in the absence of harm or prejudice to the adverse party. Florida Motor Lines Corporation v. Douglass, 1942, 150 Fla. 1, 7 So.2d 843. Inasmuch as the original application gave notice of a request for the maximum rate allowable under the statute, the amendment during the hearing which requested substantially less than the maximum was permissible.
Section 367.12, Florida Statutes, F. S.A., provides that the rates of an existing utility in effect on June 18, 1959, shall be *856 the lawful rates. It requires that a utility within six months of said date, file with the Commission schedules of rates and classifi-, cations of services. Section 367.14(7), Florida Statutes, F.S.A., provides that in a rate hearing the Commission shall consider a number of elements necessary to enable it to provide to the utility “a fair return on the fair value of the property of the public utility used and useful in the public service as evidenced by the engineering report required by § 367.12(2) [Florida Statutes) * * * ” The Utility here filed the required engineer’s report and the engineer testified at the hearing. Included in the report was an appraisal of the Utility’s land and land rights prepared by a real estate broker who did not testify. The petitioner City contends that the appraisal prepared by the real estate broker, and included as an element of value in the engineer’s report, should not have been allowed in evidence because it was merely hearsay. There would be substance to this objection if it had been urged upon the respondent Commission. The petitioner did not object to the introduction of this evidence before the Commission, so the point will not be considered here initially. Frank v. Pioneer Metals Inc., Fla.App.1961, 121 So.2d 685; 2 Official Comp.Rules and Regs, of Fla., Chapter 310-2.98 (1961).
The petitioner next contends that Sections 367.12(2) and 367.14(7) are invalid because they delegate to an engineer the exclusive power to fix the fair value of the Utility’s property in determining the rate base. Section 367.12(2) requires, among other things, the filing of a report “by an engineer registered in the state, establishing the fair value of the public utilities property used and useful in the public service, as of June 18, 1959.” As pointed out above, Section 367.14(7) provides for a fair return on the property used and useful as evidenced by the engineer’s report, together “with the original cost of all net additions to such property thereafter.”
The point would be well taken if we were to construe the cited sections as the petitioner contends. However, it is our view that the report of the engineer serves, merely as a starting point in the property valuation process. It establishes or fixes the-value of the property which the Utility-claims is the legitimate base for its rates.. The value fixed by the engineer is not conclusive against the Commission’s own investigative process. Under Sections 367.-14(1), 367.14(6) and 367.15(4) the Commission has full power to hear other evidence on the extent and value of the-Utility’s property used and Useful in the public service. This includes the power-to receive evidence offered by protestants. as well as that obtained by. the Commission’s own engineers. In the instant, matter the Commission actually considered other evidence which was reflected by the books of the Utility on original' costs and it did make adjustments, both in land values and other items claimed! for the rate base by the engineer. State ex rel. Davis v. Green et al, 95 Fla. 117, 116. So. 66 is not controlling. There, the unofficial engineer was granted unlimited authority “to fix by estimate” the amount, which the state would pay for privately-owned lands. Here, the engineer is limited by the “fair value, used and useful” standard and as we have pointed out his opinion is not conclusive against the Commission..
The petitioner City further contends that under Section 367.14(4), the-Commission must find that the rates allowed “are just, reasonable, sufficient and' compensatory * * It is claimed that there was no adequate finding in this, regard by the order under review. The City asserts that the Commission ignored' the aspect of the public interest. It claims, that the Commission acted arbitrarily in granting an abrupt and precipitous increase in rates, solely because the Utility asserted that the rate allowed would be less than a fair return on the “fair value formula.” The sum of the City’s position is that the Commission gave undue irn- *857 -portance to the Utility’s interest without giving adequate consideration to the public interest.
Section 367.22, Florida Statutes, F.S.A., docs announce a legislative policy that the regulation of public utilities under the act is to be in the public interest. This is merely a statutory recognition of a guiding concept in utility regulation. The regulatory agency must evaluate the interests of both the utility and the public in any situation. In the instant case it seems clear that the Commission did consider the public interest. It expressly found* that the rate increases were both reasonable and sufficiently compensatory under the circumstances presented by the record. It did note particularly that although the in- ■ creases were substantial they still failed to provide what would otherwise be a fair return on the value of property devoted to the public interest. It was conceded by all parties that these rates would produce less than a fair return on a fair value of the property. Our decision in Utilities Operating Co. v. King, Fla.1962, 143 So.2d 854, seems to be controlling. In some re.spects, the record in the instant case lends greater support to the position of the Utility. Here the Commission actually determined a rate base consistent with statutory requirements. It concluded that a rate of 1.89% on the water operation and a net return of nothing on the sewer operation, as requested by the Utility, was well below a rate which the statute would otherwise permit. The Commission did not undertake to express an opinion as to what a fair return should be in the absence of more complete evidence on certain elements entering into the rate structure. It nevertheless clearly found that the rates ■ allowed were entirely reasonable. In Utilities Operating Co. v. King, supra, there ■was no determination of a rate base. We there implied, and we here hold, that in • cases of this type a rate base should be •established in order to indicate the outer limits of a fair return on the used and •.useful property under the statutory formula. There may be' situations, such as Utilities Operating Co., where the evidence will clearly demonstrate that the rates allowed are minimal. It is our view, however, that the general rule is that evidence should be required to establish a proper rate base. This factor is important, both to the utility and to the public.
The order in the instant case incorporates by reference Order No. 3425, Dockets 6426-W, 6427-W, and 6428-W, where the Commission criticised the legislative standards for determining reasonable and compensatory rates under Section 367.14 (7). The Legislature has announced that the base shall be the fair value of the utility property used and useful in the public service on June 18, 1959, as evidenced by the engineer’s report, together with the original cost of all net additions thereafter. The Commission is concerned, and we think with some justification, that the so-called fair value formula actually operates unfairly to the utility’s benefit. The dual formula of fair value as of a particular date, together with original cost of subsequent additions does complicate the rate-making process. Original cost is customarily relied upon by the respondent Commission in regulating other utilities. However, the water and sewer formula has been announced by the Legislature. In so doing it has acted within the scope of its constitutional power to regulate the charges of public service corporations under Article XVI, Section 30, Florida Constitution, F.S.A. The Commission, the utilities and the public are bound by it until the Legislature makes a change.
The Commission correctly decides that it is not conclusively bound by the engineer’s appraisal mentioned in Sections 367.12(2) and 367.14(7). While this appraisal and report, when properly identified and explained, may be acceptable as the base which the utility employs to support its rate, the Commission has full power to make proper adjustments and hear other evidence on the subject. Sections 367.14 (1), 367.14(6) and 367.15(4).
*858 Having determined the fair value of the property used and useful in the public service, the Commission did not commit error in allowing a rate which would produce less than a fair return to the Utility. We note again that the Commission expressly found that the rate allowed would not adversely affect the service. It further found that it would actually enable the Utility to improve its services. In arriving at this conclusion the Commission was authorized to rely upon the report and appraisal of the engineer in the absence of other evidence that would reflect adversely upon the credibility of the report. No such evidence was exhibited in this record. If there were, it would be the responsibility of the Commission to evaluate all of the evidence, reconcile conflicts if possible, and in the ultimate, ground its judgment on the supporting substantial evidence.
For various reasons the petitioner finally contends that Section 367.21, Florida Statutes, F.S.A., is unconstitutional. This section excludes from Commission jurisdiction utilities located in municipalities with a population of 100,000 or more and which exercise municipal regulatory jurisdiction. It is contended that the Act unconstitutionally discriminates against cities such as the petitioner. We have discussed this aspect of the problem in our recent decision in Village of North Palm Beach v. Mason et al, Fla., 167 So.2d 721. For reasons there announced, which are equally applicable here, we find no constitutional impediment to the validity of the cited section.
We conclude that the Commission has not deviated from tire essential requirements of the law and its order is supported by competent substantial evidence. The petition for a writ of certiorari is denied.
It is so ordered.
DREW, C. J., and THOMAS, O’CON-NELL and CALDWELL, JJ., concur.