119 N.J. Super. 94 (1972)
290 A.2d 300
MERCER COUNCIL #4, NEW JERSEY CIVIL SERVICE ASSOCIATION, INC., A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
JAMES ALLOWAY, PRESIDENT NEW JERSEY CIVIL SERVICE COMMISSION, NEW JERSEY DEPARTMENT OF CIVIL SERVICE, AND THE NEW JERSEY CIVIL SERVICE COMMISSION AND THE NEW JERSEY DEPARTMENT OF CIVIL SERVICE, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1972.
Decided April 28, 1972.
*96 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Vincent J. Dotoli argued the cause for appellant (Mr. Joel I. Fern, attorney).
Mr. Theodore A. Winard, Deputy Attorney General, argued the cause for respondents (Mr. George F. Kugler, Jr., Attorney General, attorney).
PER CURIAM.
The question presented is whether the Civil Service Commission has not exceeded its statutory rule-making authority by promulgating an amendment of N.J.A.C. 4:1-3.8 authorizing the Chief Examiner and Secretary of the Commission, under the supervision and direction of the President of the agency, to assign to the various state operating departments outside Civil Service, on a one-year trial basis, duties and functions which the Civil Service Act imposes on and delegates to the Chief Examiner and Secretary himself, involving "classification programs, compensation programs, administrative procedures and promotional examinations in state service" (quoting from the rule amendment).
The expanded authority thus vested in the Chief Examiner and Secretary has been exercised by him by a limited subdelegation to the operating state departments, subject to certain reserved supervisory guidance and oversight by the *97 Commission itself, of functions of the type mentioned, for the period July 1, 1971 to June 30, 1972. This has been done in partial implementation of broad recommendations made by a Governor's Management Commission ("Field Commission"), acting pursuant to an Executive Order, which surveyed and reported upon a study of the functions and operations of the Executive Branch of the State Government in November 1970. This study, among many other things, criticized the efficiency of the fundamental organizational structure and operating procedures of the Civil Service Commission under the existing provisions of Title 11 of the Revised Statutes and recommended a complete reorganization of the Department of Civil Service and a substantial degree of what it denominates "decentralization" throughout the other state departments of personnel practices and procedures affecting State Government now vested in the Civil Service Department by statute. The merits of those recommendations are, of course, not now before us for review, but only the legality of the partial implementation thereof by the rule-making action of the Civil Service Commission aforesaid, taken without express legislative sanction.
It is initially useful to consider the degree of specificity of existing legislative provisions for performance of the subdelegated functions in question by the Commission and the Chief Examiner and Secretary.
That officer is required by N.J.S.A. 11:6-2(a) to establish and maintain a roster of all employees in the state classified service, recording titles of positions, rates of compensation, changes in status of employees, etc.; (b) to study and report to the Commission from time to time on rates paid in the Civil Service; (c) to regulate shedules of compensation; (d) to test and pass upon the qualifications of applicants for appointment to and promotion in the service, establish employment and reemployment lists, certify names of eligibles for employment and promotion, and numerous other ancillary administrative functions. N.J.S.A. 11:7-1 *98 details the requirements of the classification plan to be established by the Chief Examiner and Secretary and specifies that "the allocation of positions to the several classes by the chief examiner and secretary as provided by law and as approved by the commission, shall place each position to its proper class and each employee whose position has been so allocated shall assume and retain the classification title for his position." N.J.S.A. 11:7-5 requires the Chief Examiner and Secretary to certify as to the continuing need for existing positions and prohibits the creation of new positions until that officer has certified to the appointing department the necessity for such position.
In short, the Chief Examiner and Secretary, subject to the approval of the Commission, is vested by statute with primary, original, administrative authority and responsibility in the broad range of classification of positions, determination of compensation and working status and regulations, and of testing for appointment or promotion and certification of eligibles for either appointment or promotion in the whole range of the state classified service. Moreover, those duties and responsibilities are spelled out by the statute in considerable detail.
The foregoing is not to suggest that in some of the indicated respects it was not contemplated that the operating state departments should initiate requests for action by the Civil Service Department or that in many of them a good deal of cooperation between the other agencies and the Department was not envisaged, if not absolutely essential. But the operative effect of the particular action to be taken, in the categories mentioned, depends under the act upon the prior administrative decision or approval by Civil Service.
A summary of the subdelegation of functions and powers, previously exercised solely by Civil Service under the statute, effected by the President and Chief Examiner and Secretary of the Commission under the rule amendment, is as follows:
1. In the case of all employees at or below the salary range of $13,363 to $17,371, with the exception of certain specified *99 "key" titles, the operating department is given direct authority to reclassify and retitle positions. It uses for this purpose a manual of general guidelines supplied by Civil Service.
2. Certification of names for appointments from promotional employment lists is authorized to be done by the operating department.
3. The entire promotional examination process is to be conducted by the operating department whenever there are not in excess of ten interested eligibles beyond the number of vacancies to be filled.
4. The operating department is to issue promotional employment lists.
Dissatisfaction of an employee with any action in the foregoing categories is required to be appealed to the Department of Civil Service in writing within seven days of the action taken.
The Department of Civil Service will conduct periodic reviews of the general operation of the delegated functions by the operating departments and a total review of the experience under the rule change to determine whether it should be made permanent after July 1, 1972.
We are clearly of the view that the Department of Civil Service has transcended its legitimate rule-making power by the rule here adopted and its implementing subdelegations of classification and promotional functions to the operating departments. The general rule is that a power or duty delegated by statute to an administrative agency cannot be subdelegated in the absence of any indication that the Legislature so intends. R.H. Macy & Co., Inc. v. Director, Div. of Taxation, 77 N.J. Super. 155, 174-175 (App. Div. 1962), aff'd o.b. 41 N.J. 3 (1963). We find no indication from the statute or its general purposes and objectives of any legislative intent that the employee classification and promotional functions and duties expressly vested by the statute in the Commission itself, and particularly in the Chief Examiner and Secretary, or *100 any substantial portion of them, were intended to be permitted to be transferred by either the Commission or that officer to the very operating departments which are contemplated for control in respect of classification and promotional practices by the Civil Service Department. If the rule-making power extended that far, it would logically sustain extension in that manner of "decentralization" to testing for original appointments and without any of the limitations fixed for the delegated functions here involved.
The respondent argues such intent from the statutory power of the Chief Examiner and Secretary to appoint examiners, classifiers, etc., and such other employees as may be necessary to carry out the provisions of the statute. N.J.S.A. 11:6-1(a). However, this merely authorizes engaging assistants and employees to operate within the Department of Civil Service. Nor is there any comfort to respondent in N.J.S.A. 11:9-5, permitting the Chief Examiner to "obtain the assistance of other persons not on the regular staff of the commission, either within or without the classified service," in giving tests for the classified service. Here, again, the Department may hire technicians to aid it in the performance by itself of the administrative responsibility of testing.
The position of the respondent is not supported by the cases it cites sustaining the applicability of principles of flexibility and broad exercise of discretion in the manner by which the Civil Service Commission may exercise its responsibilities. They are not pertinent in the context of the issue presented by the present litigation. The specificity with which the subdelegated functions and duties in question have been allocated by the Legislature to the Commission itself and to its principal administrative officer, in the light of the general purposes of the Civil Service Act as a whole in constituting the Civil Service Department as the monitor of all other state agencies in order to achieve and maintain a merit system in career public employment, impels the view that the administrative functions here involved were *101 not intended to be transferred out of the Civil Service Department to the other operating state departments.
The foregoing is not to say that we agree with appellant's argument that the practice here challenged tends to destroy the basic civil service concept or that it violates the state constitutional provision for appointments and promotions in the state civil service according to merit and fitness and by competitive examination where practicable. N.J. Const. (1947), Art. VII, § I, par. 2. We are inclined to disagree with the position that the principles of merit and elimination of favoritism and partisanship in public employment are necessarily inconsistent with the course here taken. But we do not reach that question. It is enough that we think the Legislature has not authorized it, expressly or by reasonable implication. All reasonable intendment from the statute is to the contrary. Express sanction for a plan so far divergent from the existing statutory scheme should be sought from the Legislature.
The rule amendment is herewith reversed and set aside as invalid. However, in view of the substantial administrative reliance upon it to date, no administrative action heretofore taken pursuant to the rule or which may be taken within 45 days from the filing of the opinion herein shall be deemed invalid or otherwise affected by this decision. No costs.